# NO. 12-17-00172-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RANDALL GENE LOONEY, II,*<br>*APPELLANT* | § | *APPEAL FROM THE 3RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Randall Gene Looney, II appeals his conviction for aggravated assault. Appellant raises four issues on appeal. We affirm.

### BACKGROUND

Appellant was charged by indictment with aggravated assault with a deadly weapon. The indictment further alleged that Appellant previously was convicted of two felonies. Appellant pleaded "not guilty," and the matter proceeded to a jury trial. Following the presentation of evidence, the jury found Appellant "guilty" as charged. The matter proceeded to a trial on punishment, whereupon the jury found the enhancement allegations to be "true" and assessed Appellant's punishment at imprisonment for seventy-five years. The trial court sentenced Appellant accordingly, and this appeal followed.

### DISCLOSURE OF TESTIMONY SUBJECT TO ATTORNEY-CLIENT PRIVILEGE

In his first issue, Appellant argues that the trial court erred because it failed to prevent sua sponte Appellant's counsel from eliciting testimony from Appellant that was subject to the attorney-client privilege during a hearing outside the jury's presence. The testimony of which Appellant complains is as follows:

Q. Randall, we've talked about this before, but you understand we're fixing to pick the jury in the case?

A. Yes, sir.

Q. And one of the things we talked about before was whether or not to ask for any lesser included offenses?

A. Yes, sir.

Q. And you and I have discussed the pros and cons of that, and obviously if we were going to ask for those lesser included offenses, then now would be the time to ask the jury what they felt about lesser included offenses, you see what I'm saying?

A. Yes, sir.

Q. And so because you don't want me to -- we talked about it and it's your decision not to ask for any lesser included offenses, and I told you that there's advantages to that, because it gives the jury an option to find you guilty of a lesser charge, but you don't want me to do that, right?

A. No, sir.

Q. And just so the record's clear, I'm not going to voir dire or mention lesser included offenses, and that's okay with you?

A. Yes, sir.

## Governing Law

Texas Rule of Evidence 503(b)(2) addresses the attorney-client privilege and provides that, "[i]n a criminal case, a client has a privilege to prevent a lawyer or [the] lawyer's representative from disclosing any other fact that came to the knowledge of the lawyer or the lawyer's representative by reason of the attorney-client relationship." TEX. R. EVID. 503(b)(2). It is well settled that the privilege is personal to the client and cannot be waived solely by the attorney; the right to waive the privilege belongs solely to the client. *Bailey v. State*, 507 S.W.3d 740, 745 (Tex. Crim. App. 2016); *Burnett v. State*, 642 S.W.2d 765, 770 (Tex. Crim. App. 1982). We consider the totality of the circumstances and reasonable inferences derived therefrom as to whether there is support for a finding of waiver. *See Bailey*, 507 S.W.3d at 746.

## Discussion

In the instant case, Appellant's counsel called Appellant to the witness stand outside of the jury's presence, and Appellant testified under oath that he and his counsel discussed the benefits and detriments of requesting a lesser included offense instruction and it was his decision not to request such an instruction. But the privilege may be waived implicitly by calling the person to whom the privilege is extended to testify as a witness. *Id.*, at 747 (citing *Ballew v. State*, 640

2

S.W.2d 237, 240 (Tex. Crim. App. [Panel Op.] 1980)); *see also **Cameron v. State***, 241 S.W.3d 15, 17 n.2 (Tex. Crim. App. 2007) (calling person to testify about specific topic waives privilege related to that topic). Nonetheless, Appellant argues that his trial counsel failed to advise him that he had a right to protect these attorney-client communications. However, our review of the record does not reveal any evidence that Appellant's counsel failed to advise Appellant regarding his ability to protect attorney-client communications, even if Appellant's counsel did not explicitly do so at the time of Appellant's testimony.[1]

Based on the totality of the circumstances, we conclude that the trial court reasonably could have found that by his testifying about the communications between him and his attorney, Appellant intended to waive the attorney-client privilege as to those communications. Therefore, we hold that the trial court did not err by declining to prevent sua sponte Appellant's counsel from eliciting testimony subject to the attorney-client privilege during a hearing outside the jury's presence. Appellant's first issue is overruled.

## EVIDENTIARY SUFFICIENCY

In his third issue, Appellant argues that the evidence is insufficient to support his conviction for aggravated assault.

### Standard of Review and Governing Law

The ***Jackson v. Virginia***[2] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See **Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See **Jackson***, 443 U.S. at 315–16, 99 S. Ct. at 2786–87; *see also **Escobedo v. State***, 6 S.W.3d 1, 6 (Tex. App.—San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; *see also **Johnson v.***

---

[1] Appellant filed a motion for new trial, but did not raise the issue of whether his trial counsel failed to advise him concerning his ability to safeguard communications protected by the attorney-client privilege. The trial court denied Appellant's motion for new trial without conducting a hearing.

[2] 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).

3

*State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186. A jury is free to believe all or any part of a witness's testimony or disbelieve all or any part of that testimony. *See Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.–Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Rodriguez v. State*, 521 S.W.3d 822, 827 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011)). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. *Id.* at 15. Juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions. *Id.* An inference is a conclusion reached by considering other facts and deducing a logical consequence from them, while speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. *Id.* at 16.

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

To meet its burden of proof, the State was required to demonstrate that Appellant (1) intentionally, knowingly, or recklessly caused bodily injury to another and (2) either (a) the bodily injury caused was serious or (b) Appellant used or exhibited a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE ANN. §§ 22.01(a) (West Supp. 2017), 22.02(a) (West 2011). A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result therefrom when he is aware of, but consciously disregards a substantial

4

and unjustifiable risk that circumstances exist or the result will occur. *See id.* § 6.03(c) (West 2011). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care than an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.*

"Bodily injury" means "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8) (West Supp. 2017). A "deadly weapon" is "anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17).

**The Evidence at Trial**

In the instant case, the indictment alleged that Appellant intentionally, knowingly, and recklessly caused bodily injury to S. Stephens[3] by stabbing and cutting her with a knife, and used or exhibited the knife as a deadly weapon during the commission of the assault. At trial, the State's evidence consisted of ninety-four exhibits and testimony from twenty witnesses.

Stevens testified that, on January 8, 2016, she was with Katie Wiggins at Wiggins's house and was high on methamphetamine. She further testified that her friends, Ricky Plunkett and Laura Grindele, were present. Stevens stated that, at some point, Appellant entered the residence and she responded by jumping onto a couch and curling up into a ball. Stevens further stated that Appellant had a knife and fought with Plunkett. Stevens acknowledged that Appellant stabbed Plunkett in the back during the course of the fight and that Plunkett could have been killed as a result. She testified that Appellant grabbed her and, as he did so, stabbed her in the head and stated, "Get back or I'm going to kill her." Stevens described Appellant's stabbing her as "accidental." She further described how Appellant dragged her out of the house backward and how she could not see because she had blood in her eyes from her head wound, which was "bleeding severely." Stevens stated that Appellant held her around her neck and shoulders with the knife in his hand next to her neck.[4] Stevens also stated that she recalled "freaking out" and screaming "please don't let him take me[!]" Stevens acknowledged that the injuries Appellant inflicted on her and Ricky that night were a result of his losing control. Other witnesses' testimonies and exhibits admitted by the State largely are consistent with Stevens's testimony.

---

[3] It is apparent from the record that the indictment misspelled the surname of the victim, Shecotah Stevens.

[4] Other witnesses testified that they saw a scar on Stevens's throat after the incident.

5

Dr. Wilson Murphy testified that he treated Stevens in the early morning hours of January 9, 2016. He described the wound to her head as being consistent with a knife wound. He further testified that the manner in which the knife was used made it a deadly weapon, capable of causing death or serious bodily injury.

Former Henderson County Sherriff's Deputy Brian Huckabee testified about the statements Appellant gave after the incident. He testified that Appellant told him he accidentally cut Stevens. But Huckabee also related that Appellant offered numerous statements, including that (1) he did not recall stabbing anyone, (2) he was pretty sure he never stabbed anyone, and (3) Stevens jumped into his knife. Appellant's recorded statement was admitted into evidence.

In his brief, Appellant emphasizes that a number of exhibits were not "published" to the jury. And while this may be accurate, there is no question the exhibits were admitted into evidence.[5]

Based on our review of the entirety of the record, and having examined the evidence in the light most favorable to the verdict, we conclude that there is sufficient evidence that Appellant, at least, recklessly caused serious bodily injury to Stevens by stabbing her in the head with a knife, and the knife, in the manner of its use or intended use, is capable of causing death or serious bodily injury. *See* TEX. PENAL CODE ANN. §§ 1.07(a)(8), (17), 6.03(c), 22.01(a), 22.02(a). Accordingly, we hold that the evidence is sufficient to support Appellant's conviction for aggravated assault. Appellant's third issue is overruled.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his second and fourth issues, Appellant argues he received ineffective assistance of counsel. Specifically, he argues his counsel was ineffective because (1) he failed to request that the trial court instruct the jury on lesser included offenses to aggravated assault and (2) he failed to move for a directed verdict following the State's presentation of evidence.

---

[5] The court's charge instructed the jury, among other things, that "[t]he presumption of innocence alone is sufficient to acquit the defendant, unless you are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of *all of the evidence in the case.*" (emphasis added). We presume that the jury followed the trial court's instructions as set forth in the court's charge, and the record contains no evidence to rebut this presumption. *See **Jones v. State***, 264 S.W.3d 26, 29 (Tex. App.–Houston [1st Dist.] 2007, pet. ref'd); *see also **Gish v. State***, No. 02-09-00034-CR, 2011 WL 167076, at *4 (Tex. App.–Fort Worth Jan. 13, 2011, no pet.) (mem. op., not designated for publication).

**Governing Law**

Claims of ineffective assistance of counsel are evaluated under the two step analysis articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 674 (1984). The first step requires the appellant to demonstrate that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. To satisfy this step, the appellant must identify the acts or omissions of counsel alleged to be ineffective assistance and affirmatively prove that they fell below the professional norm of reasonableness. *See McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). The reviewing court will not find ineffectiveness by isolating any portion of trial counsel's representation, but will judge the claim based on the totality of the representation. *See Strickland*, 466 U.S. at 695, 104 S. Ct. at 2069.

In any case considering the issue of ineffective assistance of counsel, we begin with the strong presumption that counsel was effective. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). We must presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See id.* Appellant has the burden of rebutting this presumption by presenting evidence illustrating why his trial counsel did what he did. *See id.* Appellant cannot meet this burden if the record does not affirmatively support the claim. *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). A record that specifically focuses on the conduct of trial counsel is necessary for a proper evaluation of an ineffectiveness claim. *See Kemp v. State*, 892 S.W.2d 112, 115 (Tex. App.–Houston [1st Dist.] 1994, pet. ref'd).

Before being condemned as unprofessional and incompetent, defense counsel should be given an opportunity to explain his or her actions. *See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). Thus, absent a properly developed record, an ineffective assistance claim must usually be denied as speculative, and, further, such a claim cannot be built upon retrospective speculation. *Id.* at 835.

Moreover, after proving error, the appellant must affirmatively prove prejudice from the deficient performance of his attorney. *See Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999); *Burruss v. State*, 20 S.W.3d 179, 186 (Tex. App.–Texarkana 2000, pet. ref'd). The appellant must prove that his attorney's errors, judged by the totality of the representation and not by isolated instances of error, denied him a fair trial. *Burruss*, 20 S.W.3d at 186. It is not enough for the appellant to show that the errors had some conceivable effect on the outcome of the

proceedings. *Id.* He must show that there is a reasonable probability that, but for his attorney's errors, the jury would have had a reasonable doubt about his guilt or that the extent of his punishment would have been less. *See id.*; *see also* **Bone**, 77 S.W.3d at 837.

## Failure to Request Lesser Included Offense Instruction

Appellant first argues that his attorney's performance at trial fell below the professional norm because he failed to request instructions on lesser included offenses be submitted to the jury in the court's charge. Based on our review of the record and considering the testimony set forth in our discussion of Appellant's first issue, we conclude that there is evidence supporting that Appellant's counsel's failure to request a lesser included offense instruction was based on trial strategy, which Appellant, at that time, supported. It is apparent from the record that Appellant's counsel explained to Appellant why it might be beneficial to his defense to request an instruction on a lesser included offense, but Appellant advised his counsel that it was not his desire to do so. We conclude that such a strategy, while it bears the risk of only allowing the jury to consider the greater offense of aggravated assault, is not unsound. *See* **Jones v. State**, 170 S.W.3d 772, 775–76 (Tex. App.–Waco 2005, pet. ref'd) (indicating that not requesting instruction on lesser included offense could be sound trial strategy unless proven otherwise); **Sendejo v. State**, 26 S.W.3d 676, 678–80 (Tex. App.–Corpus Christi 2000, pet. ref'd) (counsel not ineffective where defendant's attorney made aware of instruction's availability by trial court, but, with defendant's assent, chose to "roll the dice" with "all or nothing" strategy).

## Failure to Move for Directed Verdict

Appellant next argues that his attorney's performance at trial fell below the professional norm because he failed to move for a directed verdict following the State's presentation of evidence. Yet, the record before us is silent about trial counsel's strategy or why he chose the course he did. Normally, a silent record cannot defeat the strong presumption of effective assistance of counsel. *See* **Garza**, 213 S.W.3d at 348; **Thompson v. State**, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999); **McGarity v. State**, 5 S.W.3d 223, 229 (Tex. App.–San Antonio 1999, no pet.) (fact that defense attorney may or could have moved for directed verdict on possibility of its being granted does not show that trial counsel's assistance was ineffective); *see also* **Menefield**, 363 S.W.3d at 593 (holding if trial counsel is not given opportunity to explain allegedly deficient actions, appellate court should not find deficient performance absent challenged conduct "so outrageous that no competent attorney would have engaged in it"); *but see* **Andrews v. State**, 159

8

S.W.3d 98, 102–03 (Tex. Crim. App. 2005) (reversing a conviction "in a rare case" on the basis of ineffective assistance of counsel when trial counsel did not object to a misstatement of law by the prosecutor during argument).

Moreover, Appellant also bore the burden to prove that there is a reasonable probability that, but for his attorney's errors, the outcome would have been different. *See Burruss*, 20 S.W.3d at 186. In order to grant any motion for directed verdict, a trial court must determine that there is legally insufficient evidence to support a finding that the defendant is "guilty" beyond a reasonable doubt. *See Orellana v. State*, 381 S.W.3d 645, 652 (Tex. App.–San Antonio 2012, pet. ref'd). As set forth in our discussion of Appellant's third issue, there is legally sufficient evidence to support his conviction for aggravated assault. Therefore, we hold that Appellant cannot satisfy the second prong of *Strickland*.

**Summation**

Having reviewed the record in the instant case, we hold that Appellant has not demonstrated that his trial counsel's alleged deficient conduct qualifies as ineffective assistance under the *Strickland* test. Appellant's second and third issues are overruled.

## DISPOSITION

Having overruled Appellant's first, second, third, and fourth issues, we *affirm* the trial court's judgment.

GREG NEELEY
Justice

Opinion delivered October 3, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

9



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### OCTOBER 3, 2018

### NO. 12-17-00172-CR

**RANDALL GENE LOONEY, II,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 3rd District Court

of Henderson County, Texas (Tr.Ct.No. CR16-0181-3)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*